UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY J. ONETO,<br><br>    Plaintiff,<br><br>v.<br><br>MELVIN WATSON, et al.,<br><br>    Defendants. | Case No. 22-cv-05206-AMO<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 48 |

Before the Court is Defendants' motion to dismiss certain causes of action alleged in Plaintiff Roy J. Oneto's First Amended Complaint. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for June 6, 2024, was vacated. *See* Civil L.R. 7-6. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby **GRANTS** Defendants' motion, for the following reasons.

## I.    BACKGROUND

The Complaint makes the following allegations, which the Court accepts as true for purposes of the motion to dismiss. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Plaintiff Roy J. Oneto is former employee of Cakebread Cellars, a winery in Rutherford, California. First Amended Complaint ("FAC") ¶¶ 1, 7. Oneto had a Zenker's diverticulum, which is essentially a small pouch in the throat resulting from a herniation of the muscles of the esophagus. FAC ¶ 19. Defendant Cigna Health and Life Insurance Company ("Cigna") administered medical benefits for Cakebread Cellars's employee welfare benefit plan ("the Plan," FAC ¶¶ 1, 7), and Cigna Health Management, Inc. ("CHMI," together, "Cigna Defendants")

provided utilization management services to Cigna (FAC ¶ 14).  Defendant Melvin Watson, M.D., was the medical director for CIGNA during the relevant period.  FAC ¶ 17.

In October 2020, Oneto underwent an initial surgery to address his Zenker's diverticulum.  FAC ¶¶ 19-20.  Cigna covered the cost of that surgery and related testing.  FAC ¶ 21.  In November 2020, Oneto's treating physician, Dr. Vyvy Young, determined that the diverticulum (or pouch) remained, requiring further surgery.  FAC ¶¶ 22-23.  Dr. Young scheduled the subsequent surgery for December 2020.  FAC ¶ 26.

Dr. Young's office submitted a request to Cigna for prior authorization of this second procedure, and the request, for coverage of an unspecified "esophagus surgery procedure," was flagged for a medical-necessity review.  FAC ¶ 28.  Cigna, acting through CHMI, contacted Dr. Young on December 9, 2020, to request more information to assist in this review.  FAC ¶ 29, Ex. 1.  Two days later, on December 11, 2020, Dr. Watson sent a letter to Oneto and Dr. Young announcing Cigna's decision to deny coverage for the procedure.  FAC ¶ 32.  That letter stated that Cigna had determined the requested service was "not medically necessary" and was "considered experimental, investigational / unproven," in that "there [were] not enough current, published medical studies to show this treatment is effective or improves health outcomes for [Oneto's] diagnosis."  FAC ¶ 33, Ex. 2.  At some point, Dr. Young provided Dr. Watson with "new clinical information" during a "peer-to-peer conversation," and on that basis, Cigna rescinded its initial denial and approved coverage of the procedure on December 15, 2020.  FAC ¶ 34, Ex. 3.

Because medical coverage had not been approved for the procedure prior to the date it was scheduled to occur (December 14, 2020), Oneto canceled the surgery.  FAC ¶ 39.  Thereafter, Mr. Oneto's employment with Cakebread Cellars ended.  FAC ¶ 40.  Oneto eventually underwent the revision surgery in August 2021, with coverage for the procedure provided under a plan established by his new employer.  FAC ¶ 40.

Oneto originally filed suit in San Francisco Superior Court on December 9, 2021.  ECF 1.  After Oneto served Dr. Watson with process on August 13, 2022, Dr. Watson timely removed the

1  case to this court on September 12, 2022.  *Id.*  Oneto filed the FAC in this Court on January 12,

2  2024.  ECF 47.  The FAC includes the following causes of action:

3      (1) Breach of fiduciary duties against Cigna & CHMI (29 U.S.C. § 1104);

4      (2) Failure to discharge duties under the plan against Cigna & CHMI (29 U.S.C. § 1104);

5      (3) Non-fiduciary violations against Cigna, CHMI, and Dr. Watson (Cal. Health & Safety

6          Codes); and

7      (4) Medical negligence against Dr. Watson.

*See* ECF 47.

## II. DISCUSSION

In the instant motion, Defendants move to dismiss the third and fourth claims under Federal Rule of Civil Procedure 12(b)(6).  ECF 48.[1]  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).

---

[1] In support of their motion to dismiss, Defendants ask the Court to take judicial notice of (1) the Summary Plan Description ("SPD") for the Cakebread Cellars employee benefits welfare plan that is referenced in Paragraph 7 of the FAC (*see* Klausner Decl. ¶ 2, Ex. A); and (2) the List of All Licensed Plans, as of January 25, 2024, obtained from the California Department of Managed Health Care's web site: https://wpso.dmhc.ca.gov/hpsearch/viewLicensedHealthPlan.aspx (*see* Klausner Decl. ¶ 3, Ex. B.).  ECF 49, ECF 50.  The Court OVERRULES Oneto's objection to these materials because the SPD is incorporated by reference and the list from the government website is judicially noticeable.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); Fed. R. Evid. 201.

1  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005).

The first two claims in the FAC arise under ERISA, and the latter two claims arise under state law. Defendants move to dismiss the two state law claims. Like the parties do in the briefing, the Court takes up the medical negligence claim first before turning to the "non-fiduciary violations."

### A.   Medical Negligence

Defendants argue that the medical negligence claim is preempted by ERISA. "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). To achieve that end, ERISA includes two forms of preemptive force: (1) express preemption under Title 29 U.S.C. § 1144(a) (ERISA § 514(a)); and (2) conflict preemption based on Title 29 U.S.C. § 1132(a) (ERISA § 502(a)). *See Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005); *see also Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019). Most courts refer to ERISA's conflict preemption as "complete preemption." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009). Because both forms of ERISA preemption (complete and express) "defeat state-law causes of action on the merits," the Court may consider either or both preemption statutes in deciding Defendants' motion to dismiss. *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011); *see also Cleghorn*, 408 F.3d at 1227. The Court here considers whether ERISA completely preempts Oneto's medical negligence claim.

A state-law claim need not mirror the precise elements of an ERISA claim to be preempted. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 667 (9th Cir. 2019). Instead, a two-pronged test determines whether a state-law claim is completely preempted by ERISA

4

1  Section 502(a). *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1107 (9th
2  Cir. 2011). Under the test set out by the Supreme Court in *Davila*, ERISA completely preempts a
3  state-law claim if: "(1) the individual could have brought his claim under this ERISA provision;
4  and (2) no other independent legal duties are implicated by the defendant's actions." *Rudel v.*
5  *Hawai'i Mgmt. All. Ass'n*, 937 F.3d 1262, 1269 (9th Cir. 2019) (citing *Davila*, 542 U.S. at 210).
6  To show complete preemption, both elements must be met. *Hansen v. Grp. Health Coop.*, 902
7  F.3d 1051, 1059 (9th Cir. 2018). The Court takes up each element separately.
8        The first prong of the *Davila* test asks "whether a plaintiff seeking to assert a state-law
9  claim 'at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B).'"
10 *Marin Gen. Hosp.*, 581 F.3d at 947 (citing *Davila*, 542 U.S. at 210). ERISA § 502(a)(1)(B) in
11 turn provides:

> A civil action may be brought – (1) by a participant or beneficiary –
> . . . (B) to recover benefits due to him under the terms of his plan, to
> enforce his rights under the terms of the plan, or to clarify his rights
> to future benefits under the terms of the plan.

15 29 U.S.C. § 1132(a)(1)(B).
16       Here, Oneto alleges Dr. Watson negligently determined that the procedure in question was
17 experimental, investigational, and unproven and not medically necessary under the terms of the
18 Plan, which led to a determination that the surgery was not eligible for coverage under the Plan.
19 *See, e.g.*, FAC ¶¶ 35-36, 73-77. Upon learning of the denial of his claim, Oneto "could have paid
20 for the treatment [himself] and then sought reimbursement through a § 502(a)(1)(B) action, or
21 sought a preliminary injunction." *Davila*, 542 U.S. at 211. Though Oneto argues that such an
22 enforcement action would have been impracticable given the constraints of time and costs, he cites
23 no authority in support of the premise that such factors should be considered. Opp. (ECF 51) at
24 12. This inquiry focuses on whether such an action could have been brought "at some point in
25 time." *Id.* at 210. Because Oneto could have brought a claim seeking provision of benefits, the
26 first prong of the *Davila* test weighs in favor of preemption.
27       The second *Davila* query is "whether a claim relies on the violation of a legal duty that
28 arises independently of the plaintiff's, or their assignor's, ERISA plan." *Hansen v. Grp. Health*

5

*Coop.*, 902 F.3d 1051, 1059 (9th Cir. 2018) (citing *Davila*, 542 U.S. at 210). "If there is some other independent legal duty beyond that imposed by an ERISA plan, a claim based on that duty is not completely preempted under § 502(a)(1)(B)." *Id.* (quoting *Marin Gen. Hosp.*, 581 F.3d at 949). For example, the Ninth Circuit considered whether claims arose under the independent legal duty of a contract in *Marin General Hospital*, 581 F.3d 941, where the plaintiff brought state law claims arising out of an alleged verbal promise to pay 90% of the hospital's charges. The appellate panel determined that the promise to pay created a legal duty independent from a claim for benefits under ERISA because the promise to pay 90% of billed charges was not a matter of plan interpretation. *Id.* at 948-49. Similarly, in *Blue Cross of California v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045 (9th Cir. 1999), plaintiff health care providers sued Blue Cross to recover for alleged breaches of contracts between Blue Cross and the providers, and the Ninth Circuit determined that those contracts created independent legal duties. *Id.* at 1051.

Oneto argues that his medical negligence claim does not flow from the Plan but rather from the duty of reasonable care that Dr. Watson owed in determining if the proposed procedure was medically necessary. Opp. at 11-12. This mischaracterizes the interaction between Dr. Watson and Oneto. Dr. Watson was a Cigna employee and was acting in that capacity when he was asked to evaluate Cigna's coverage position with respect to Oneto's surgery. The only conduct that Oneto's medical negligence claim puts at issue is Dr. Watson's decision to initially deny coverage under the Plan, a decision reached without treating Oneto, and the connection between Dr. Watson and Oneto exists solely by virtue of the Plan itself. The Plan is the nexus between Dr. Watson and Oneto, and without the Plan, Oneto's claim of a duty owed toward him could not exist. Oneto's medical negligence claim necessarily could not arise "independently of ERISA or the terms of the employee benefit plans at issue in [this] case." *Davila*, 542 U.S. at 212. Significantly, Oneto fails to cite to any authority for the premise that a professional or medical negligence claim could arise from a decision to deny benefits coverage. Though he cites to *Pegram v. Herdrich*, 530 U.S. 211 (2000), that case has no application here.[2]

---

[2] Unlike *Pegram*, this case does not concern a physician-owned HMO or involve a mixed treatment and eligibility decision. Here, Mr. Oneto's treating physician was Dr. Young, and she

Ultimately, contrary to Oneto's position, there is no question that the medical negligence claim "relates to" the ERISA Plan. The Plan provides health care coverage to the employees of Oneto's former employer, Cakebread Cellars. FAC ¶ 7. The Cigna Defendants were hired, pursuant to the Plan, to administer the Plan and employed Dr. Watson in the course of their administration. FAC ¶¶ 8, 13, 17. As Defendants correctly point out, Oneto has identified the ERISA plan, asserted ERISA jurisdiction, and sued Cigna as an ERISA plan fiduciary. *See generally* FAC. Because Oneto's claim does not arise independent from his Plan, the second prong of the *Davila* test weighs in favor of preemption.

The Court finds that Oneto's claim for medical negligence satisfies both elements of the *Davila* test, and it is therefore preempted.

### B. "Non-Fiduciary Violations"

As noted above, the Cigna Defendants and Dr. Watson move to dismiss the third claim, asserted against all Defendants and styled as "Non-Fiduciary Violations" of "H&S Codes." Defendants, however, are not subject to the Health and Safety Code sections to which Oneto cites. In California, the Department of Managed Health Care (DMHC) and the California Department of Insurance (CDI) regulate the health care industry. *Foothill Church v. Watanabe*, 623 F. Supp. 3d 1079, 1085 (E.D. Cal. 2022). Relevant here is the fact that the DMHC "regulates . . . 'health care service plans' under the Knox-Keene Health Care Service Plan Act of 1975, [codified as] Cal. Health & Safety Code §§ 1340 et seq." *Id.* at 1085. The definition of plans subject to the Knox-Keen Act includes either of the following:

> (1) Any person who undertakes to arrange for the provision of health care services to subscribers or enrollees, or to pay for or to reimburse any part of the cost for those services, in return for a prepaid or periodic charge paid by or on behalf of the subscribers or enrollees.

---

was not associated with Cigna or its eligibility decisions in this case. *See, e.g.*, FAC ¶¶ 2, 19-24. Dr. Watson's medical-necessity decisions fit squarely into the box of "pure eligibility decisions" articulated in *Davila*, and those decisions do not constitute "mixed eligibility and treatment decisions" where Dr. Watson held no responsibility or interest in treating Oneto. *Davila*, 542 U.S. at 221 (where medical necessity determinations are made by someone other than the treating physician, those decisions "are pure eligibility decisions, and *Pegram* is not implicated.").

7

> (2) Any person, whether located within or outside of this state, who solicits or contracts with a subscriber or enrollee in this state to pay for or reimburse any part of the cost of, or who undertakes to arrange or arranges for, the provision of health care services that are to be provided wholly or in part in a foreign country in return for a prepaid or periodic charge paid by or on behalf of the subscriber or enrollee.

Cal. Health & Safety Code § 1345; *see also Rea v. Blue Shield of California*, 226 Cal. App. 4th 1209, 1215 (2014) ("[T]he Knox-Keene Act . . . provides the legal framework for the regulation of California's individual and group health care plans, including health maintenance organizations (HMO) and other similarly structured managed care organizations (MCO).").

Here, Cigna is neither an HMO nor MCO. The DHMC's website confirms that Cigna is not managed by the Department as a health care service plan. Klausner Decl. ¶ 3, Ex. B. Both the Complaint itself and the Summary Plan Description (SPD) that it incorporates undercut the allegation that Cigna pays for or reimburses healthcare services in return for prepaid or periodic charges (FAC ¶ 8) because, as the FAC acknowledges, the Plan is fully self-funded, with costs being shared by Cakebread Cellars and its employees. FAC ¶ 11; Klausner Decl. ¶ 2, Ex. A (Plan at 68). Cakebread Cellars is fully responsible for Plan benefits, and the Plan reads plainly, "The health benefits described in this booklet are self-funded by the Employer. The Employer is fully responsible for the self-funded benefits." Klausner Decl. ¶ 2, Ex. A (Plan at 68). Cigna's role, in contrast, is to administer those benefits and provide the Plan with related services. *Id.* ("Cigna provides contract administration by processing claims and provides other services to the Employer related to the self-funded benefits. Cigna does not insure nor guarantee the self-funded benefits."). Cakebread Cellars's fully-funded plan, administered by Cigna, does not rely on prepaid or periodic charges and thus does not constitute an HMO nor MCO.

Oneto asserts that Cigna and CHMI violated California Health and Safety Code Section 1374.30(b) and that Dr. Watson violated Section 1367.01(e), both provisions of the Knox-Keene Act. FAC ¶¶ 58, 60. Those code sections do not apply to these Defendants, and accordingly, Oneto cannot state a claim for violation of any obligations arising under those provisions. Oneto's conclusory statement to the contrary (FAC ¶ 9) cannot overcome a plain reading of the Plan and

1  thus does not compel an alternative result.  The Court therefore dismisses the third cause of
2  action.³

3  **III.   CONCLUSION**

4  For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss the third
5  and fourth causes of action in the FAC.  Defendants shall file an answer responding to the
6  remaining causes of action within 21 days from the date of this order.  Also within 21 days from
7  the date of this order, the parties shall meet and confer and propose two dates in either July or
8  August for a further case management conference.

9  **IT IS SO ORDERED.**

10 Dated: June 10, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

---

³ Defendants present two alternative bases to dismiss this cause of action, including (1) express preemption under ERISA and (2) the statutory inapplicability of the provisions cited to the circumstances presented.  Though the Court's analysis in this Order focuses on the latter rationale, this cause of action is also expressly preempted under ERISA.  The existence of the Plan is essential to Oneto's claim for non-fiduciary violations because the very essence of his claim is that Dr. Watson erred in concluding that the surgery was not medically necessary, an assessment conducted under the terms of the Plan.  FAC ¶¶ 34-35.  The existence of the Plan "'is a critical factor in establishing liability'" in Oneto's claim for violation of state law, and it is accordingly preempted.  *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 136, 139-40 (1990)).